**Michael TETA, Plaintiff,**

**v.**

**Daniel PACKARD, in his personal capacity and in his official capacity as an employee and agent of Northern Illinois University, Defendant.**

**No. 93 C 20288.**

United States District Court,
N.D. Illinois,
Western Division.

Feb. 26, 1997.

---

Howard R. Wertz, Evanston, IL, for Plaintiff.

Andrew N. Levine, Paul J. Ciastko, Illinois Attorney General's Office, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

### INTRODUCTION [1]

During the evening of January 23, 1992, plaintiff Michael Teta, a second semester freshman at Northern Illinois University, was socializing with other students on the fourth floor of the residence hall where he lived. This socializing included watching television, snacking on food, listening to music, conversing generally and drinking beer. Plaintiff admits to consuming two beers between 7:00 and 8:30 p.m. Sometime between the hours of 9:00 and 9:15 p.m., a fire alarm sounded in Teta's residence hall. Teta was not pleased about this because it was cold outside. To avoid leaving the building, Teta, along with his girlfriend and his roommate, left his room and hid in the men's bathroom. To escape detection, Teta and his friends hid by standing on tops of toilets in the stalls. Teta and his friends were not successful, however, because a NIU resident assistant soon discovered them and told them to go outside for the fire drill.

After they were caught, Teta and his two friends returned to his room, retrieved their jackets and proceeded to the stairwell. On the way down the stairs, Teta had to stop between the third and second floor because the line of people in the stairwell had stopped moving. This upset Teta because the fire drill was not "getting over with" to his satisfaction. After a few minutes the line began to move again. The bottom of the stairwell opens into a large corridor, which, in turn, leads towards two hallways, one to the left and one to the right. When Teta reached the bottom of the stairs, there were students in front of him exiting the building through glass doors located on the left side of the corridor. Teta had to wait approximately one minute as the students in front of him exited. Teta did not want to deal with the large crowd of people. Therefore, he attempted to exit the building by proceeding towards the hallway on the right. (The record is not clear whether the hallway on the right directly led to an exit.)

After taking two or three steps towards the hallway on the right, Teta claims he felt defendant Daniel Packard, a resident assistant for NIU, grab his right arm just above the elbow. Packard asked Teta where he was going. Teta turned to Packard and told Packard he was going outside and to get his hands off him. Teta claims he did not recognize Packard, but he assumed he was a resident assistant because "he was acting as if he was in charge." After Teta responded to Packard's question, Teta claims that Packard pushed him against a wall approximately two feet away. Teta claims that Packard then stepped towards him and put his right hand on Teta's neck. Teta claims that Packard told him that he "was going to rip [his] fucking head off." Teta looked around at the other students and said "go ahead and do it, you'll lose your job." Teta claims that Packard then released his grip. Teta turned and walked back towards the door where everyone else was exiting.

Teta claims that as he opened the door to exit, Packard pushed him aside with his forearm, pulled the door closed and would not let him exit. Packard then told Teta that "you're not going anywhere, you're in deep shit." At this point, Karen Stock, a senior staff member, arrived, and asked Teta to leave. Teta left the building.[2]

---

1. The facts for purposes of this motion are not in dispute and are taken from the parties' statements of fact filed pursuant to Local General Rules 12M and 12N.

2. The NIU incident reports, attached to the amended complaint and Teta's response to the motion for summary judgment, reveal a different version of the foregoing events. According to statements made by Packard, it was Teta who

While Teta was standing outside the residence hall he could see Packard inside the building talking with several senior staff officials. Teta claims he and Packard made eye contact at one point. Teta "scowled" at Packard, but neither of them said anything or made any other gestures, and Packard continued to converse with the staff officials. Teta waited outside the residence hall with the other students for approximately ten to fifteen minutes before they were all permitted to reenter the building. Teta returned directly to his room, and he did not have any contact with Packard.

A short time later, Teta was in the room of another student, Julie Sorden, where he began to discuss the situation and what he should do about it. A few minutes later, there was a knock at the door. There were several senior staff people, some resident assistants and two NIU police officers. Teta exited the room, and Packard, who was also present with the staff, pointed at him. One of the police officers then approached Teta and asked him his name. The officer informed Teta that Packard accused Teta of assaulting him. After a brief discussion, Teta was told to go to his room and get his jacket. Once inside his room, Teta was placed under arrest and handcuffed. He was then escorted out and transported to the NIU police station, where he provided a written statement. Packard was also present, and he signed a complaint charging Teta with aggravated battery, accusing Teta of striking him in the chest with his hands knowing that Packard was a resident assistant at NIU.[3]

Teta was then taken to the DeKalb County Jail. Teta claims that while en route to the jail, one of the officers in the car commented that the jail was at full capacity and told him that "they are going to have fun with you." After the officers started joking back and forth, Teta said "if anything like this does

happen, I assure you I will have a lawyer." One of the officers responded by saying "you're going to need to save your money for a proctologist because you're going to need one after you get out of there." Teta arrived at the jail between 11 p.m. and midnight, where he was fingerprinted, searched and showered. He remained in the jail until 8:30 a.m., whereupon his friends posted bond on his behalf and he was released.

Teta claims that this incident "knocked [him] off the track for a career in law enforcement." He did not feel he was treated professionally by the police officers and "didn't like being on the other side of it … and [he] kind of lost some hope [he] had or some respect [he] had for the aspiration of law." He also did not like losing his freedom for a night and felt like he lost his dignity by having to go through the booking procedures. He further claims that being arrested in the residence hall caused others to "look at him differently" and that he felt like he was an outcast.

As a result of the incident with Packard, Teta faced criminal charges in state court as well as disciplinary charges with NIU. According to Teta's amended complaint (the parties have not discussed this fact in their Rule 12M and 12N statements), he was found not guilty at trial. The NIU proceedings relating to his alleged physical battery on Packard were eventually dropped. (Teta apparently pleaded no contest to failing to comply with a fire drill.) Teta missed approximately four days of school to attend both the criminal and university proceedings. In February of that same year, Teta saw a doctor one time for anxiety and insomnia. Teta would go home as often as possible during the rest of the semester, as it was the only thing that seemed to ease his worries. Teta dropped out of NIU after completing two years of study. He claims that he "basically lost [his] drive" and "no longer wished

became belligerent upon being asked to exit the building, and when Teta refused, he allegedly pushed or struck Packard in the chest to prevent Packard from securing one of the doors. Although Packard was deposed in the course of pretrial discovery, the parties have not submitted any of his deposition testimony for consideration at this time. Packard's alleged version of events plays no role in the court's decision other than to

provide relevant background to the criminal charges that ensued.

3. Although the criminal complaint signed by Packard alleged a charge of aggravated battery, it appears that the criminal charge filed by the prosecutor was for misdemeanor battery.

to pursue [his] education" as a result of the incident involving Packard. Since the incident, Teta has gone through a series of jobs, none of which are law enforcement related.

## PROCEDURAL BACKGROUND

On January 22, 1993, Teta filed a four-complaint against Packard in the circuit court of DeKalb County, Illinois, alleging state law claims of malicious prosecution (Count I), defamation (Count II) and emotional distress (Count III) and a claim based on the "violation of civil, constitutional and statutory rights" (Count IV). Service of process was effectuated on September 21, 1993. Packard timely filed a notice of removal in this court based on federal question jurisdiction, 28 U.S.C. §§ 1331 and 1343, in that the complaint alleged violations of Teta's constitutional rights pursuant to 42 U.S.C. § 1983. Upon completion of discovery, Packard moved for summary judgment. In a prior order, this court construed Packard's motion for summary judgment as a motion to dismiss and granted the motion, dismissing Count IV without prejudice. *See* Minute Order of August 19, 1996. Teta filed an amended complaint—Counts I–III allege federal claims and Counts IV–VII allege state law claims. Packard moves for summary judgment on the federal claims.

## DISCUSSION

Summary judgment is proper only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Swaback v. American Info. Techs. Corp.,* 103 F.3d 535, 539–40 (7th Cir. 1996). The court views the evidence and draws all reasonable inferences therefrom in a light most favorable to the non-moving party. *Id.*

In dismissing Count IV of the original complaint, this court observed that it was not entirely clear what constitutional right Teta sought to vindicate in Count IV. The court construed Count IV to be advancing some sort of due process claim—Teta did not specify in his complaint or in his response brief

whether it was a substantive or procedural due process claim. Considering both possibilities, the court found that Teta could not maintain a claim under either theory. *See* Minute Order of August 19, 1996 (citing *Albright v. Oliver,* 510 U.S. 266, 269–71, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994), *Mahoney v. Kesery,* 976 F.2d 1054, 1060–61 (7th Cir.1992), and *Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 43 (1st Cir.1994)). Because Teta indicated in his response brief that he intended Count IV to advance other constitutional claims, some of which this court believed to be questionable, the court held a Rule 16 conference before granting Teta leave to amend his complaint. At that conference, the court advised Teta's counsel in no uncertain terms that it could not perceive of any basis upon which Teta could advance a First Amendment claim. The court further stated that the only possible federal claim he might have is a Fourth Amendment claim, but even that was questionable. *See* Transcript of Proceedings, pp. 2–7. Before granting Teta's motion for leave to amend, the court issued additional words of caution to Teta's counsel:

> THE COURT: I'm going to tell Mr. Wertz. Make sure that —— don't plead causes of action that after your research shows may be a questionable one. I'm going to look carefully at that because I don't want to spend time on obvious matters that you can't plead.

> MR. WERTZ: Judge, it's been my policy that if I do research and I don't think that I have a chance, I'll sit down and talk to my client. If I believe that its either clear we do or a substantial honest disagreement—but if I plead it, it will be [in] good faith, Judge.

> THE COURT: All right. Well, I want to make sure of that, especially in terms of the First Amendment right and the Fourth as well. You better look up the law as to state actor under these types of circumstances. You still may have a state cause of action, but I'm getting too many of

these that we may not be in the right ball park.

Transcript of Proceedings, pp. 8–9.

Teta's amended complaint alleges violations of his right to free speech under the First Amendment (Count I), right to be free from unreasonable seizure under the Fourth Amendment (Count II), right to due process under the "Fourth and Fourteenth Amendments" (Count III),[4] and, in addition, state law claims of malicious prosecution (Count IV), defamation (Count V), intentional infliction of emotional distress (Count VI) and "violation of state statutes" (Count VII). From a review of the amended complaint, it is apparent to the court that Teta's counsel either did not get the picture at the Rule 16 conference, or he chose to deliberately ignore the court's admonitions.

■ The due process claim was not one of the contemplated causes of action Teta would be permitted to replead. That is evident not only from the Rule 16 conference, but from the court's prior order as well, wherein it stated:

"[I]n light of the Supreme Court's decision in *Albright,* plaintiff cannot maintain a section 1983 action based on substantive due process where the complained of conduct is nothing beyond the tort of malicious prosecution. [*Albright,* 510 U.S. at 271 n. 4, 114 S.Ct. at 811 n. 4.] Nor can plaintiff advance a procedural due process claim, as he has an adequate state law remedy under the tort of malicious prosecution. *Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 43 (1st Cir. 1994). Thus, in order to state a claim, plaintiff must vindicate some other constitutional right, *see Mahoney v. Kesery,* 976 F.2d 1054, 1060–61 (7th Cir.1992), and his failure to do this in the complaint is fatal to Count IV."

Minute Order of August 19, 1996. For the reasons stated above, the court did not grant Teta leave to replead a due process claim,

and whatever research his counsel may have conducted before amending the complaint, it obviously did not include examining the court's prior order in this case. Because Teta was not permitted to replead such a claim, Count III shall be stricken from the amended complaint with prejudice.

■ Similarly, the record is devoid of any evidence that Teta engaged in protected speech and that Packard retaliated against him in response thereto. At the Rule 16 conference, Teta's counsel stated that there would be proof that immediately after the fire drill, Teta spoke out to other students about the fire drill being held in cold weather, that Packard observed this and that he signed the complaint in retaliation against Teta's protests. Transcript of Proceedings, pp. 4–5. The record reveals anything but this. Teta testified in his deposition that he was standing outside among a crowd of students and that Packard was contemporaneously standing inside the lobby of the residence hall talking to staff officials. Unless Packard could read lips, which there is no evidence of, the court cannot reasonably infer that Packard was aware of what Teta was saying when Teta was outside during the fire drill. Nor can Teta rely on the alleged conversation he had with a student in a dormitory room after the fire drill was over.[5] The door to the room was closed when he was speaking to the other student about what happened. When Packard and the other staff members arrived at the door to the room, the police officers were already with them and Teta was immediately arrested. There is no violation of the First Amendment here, and the court, therefore, summarily grants Packard judgment as a matter of law on Count I.

This leaves Count II, Teta's Fourth Amendment claim. As discussed below, this claim is based on Packard's signing of a criminal complaint against Teta which result-

---

**4.** Like the original complaint, the amended complaint does not specify whether it is a substantive or procedural due process claim, or both. In addition, the amended complaint does not elaborate upon what role the Fourth Amendment plays in Teta's due process claim. In all likelihood this is a typographical error and the court shall assume Teta intended to reference the Fifth Amendment.

**5.** It should be noted that, as to both situations, Teta did not testify in his deposition to what his exact words were during either conversation, only that he discussed "what happened."

ed in Teta's arrest and overnight detention at the county jail. To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). Packard's primary contention is that he was not acting under color of state law when he signed a criminal complaint against Teta. Packard argues that the power to file a criminal complaint is not conferred by statute upon a select few, but is available to all private citizens as a matter of right. In response, Teta contends that Packard was acting under color of law because he was acting in his capacity as a resident assistant of NIU, a state university, throughout the evening of January 23, 1993. Alternatively, Teta contends that even if Packard was a private citizen, he was nonetheless performing a public function, i.e., clearing and securing a publicly owned building during a fire drill, at the time of the incident.

■ The traditional definition of acting under color of state law requires that the defendant have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S.Ct. at 2255. A plaintiff can also satisfy the color of law requirement by showing that the defendant's conduct constituted "state action." *Id.* In order to constitute state action, the alleged deprivation "must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible," and the defendant "must be a person who may fairly be said to be a state actor." *Id.* State employment is generally sufficient to render the defendant a state actor, and where a public employee acts in his official capacity or exercises his responsibilities pursuant to state law, he acts under color of state law. *Id.* at 50, 108 S.Ct. at 2255–56.

■ However, not every act committed by a public employee is attributable to the state. Acts of state officials "in the ambit of their personal pursuits" are not state action.

*Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945). Thus, a public employee's private conduct, outside the scope of his employment and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law. *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 835–36 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 950, 136 L.Ed.2d 837 (1997): *Martinez v. Colon,* 54 F.3d 980, 986–87 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995); *Barna v. City of Perth Amboy,* 42 F.3d 809, 816 (3d Cir.1994); *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir.1994). There can be no state action or acting under of color of law if the challenged conduct is not related in some meaningful way either to the employee's governmental status or to the performance of his duties. *Martinez,* 54 F.3d at 987.

The first step in the court's analysis of this issue is to determine what the complained of conduct is in this case. There are two incidents which arguably could be a basis for this action—the physical altercation between Teta and Packard which occurred in the dormitory lobby and the subsequent signing of a criminal complaint by Packard. Clearly, Teta is not proceeding on the basis of the former conduct, as he has not presented any allegations specifying a constitutional claim nor any argument in his brief relating to the reasonableness of Packard's alleged use of force in the lobby. Rather, it is the latter conduct which forms the basis of Teta's Fourth Amendment claim. That is, Teta claims that Packard's signing of the criminal complaint without probable cause, resulting in Teta's arrest and over-night detention in the county jail, violated his Fourth Amendment right to be free from unreasonable seizure.

■ The issue the court must resolve, therefore, is whether Packard was acting under color of state law when he signed the criminal complaint against Teta. To sign and file a criminal complaint with the police is the act of a private citizen. *Johnson v. Miller,* 680 F.2d 39, 40 (7th Cir.1982). Packard's signing of the complaint did not require the exercise of power possessed by virtue of

state law, nor was it made possible only because Packard was clothed with the authority of state law. Granted, Packard's status as a resident assistant enhanced the seriousness of the criminal charge against Teta, but there is no evidence that his status as a resident assistant gave Packard any greater authority to sign a criminal complaint beyond that of an ordinary citizen. Thus, Packard's conduct does not fit the traditional definition of acting under color of state law.

Nor does Packard's conduct fall within the notion of state action. The evidence of Packard's responsibilities and duties as a resident assistant is scant, and what little evidence there is fails to establish any meaningful relationship between the challenged conduct and Packard's official duties. At best, Packard's duties included the enforcement of NIU rules. There is no evidence that his duties included enforcement of the Illinois criminal code. In all likelihood those duties rested exclusively with the police officers employed by NIU, including the officers who arrested Teta. Thus, anything beyond Packard's initiation of NIU administrative or disciplinary proceedings against Teta would be beyond the scope of his duties as a resident assistant. In short, Packard's signing of the criminal complaint is not fairly attributable to the state because it was not related in any meaningful way to his official duties.[6]

Even if Packard's duties somehow entailed the enforcement of the Illinois criminal code, signing a criminal complaint as the "victim" of an aggravated battery would still have been nothing more than the act of a private citizen. See Sasso v. Davis, No. 84 C 6268, 1986 WL 12591, at *5 (N.D.Ill. Nov. 3, 1986) (holding that police officer who signed criminal complaint as a "victim" did not act under color of state law). Absent proof that Packard went beyond merely reporting the criminal conduct, in a manner possible only by virtue of his position as a state employee, see,

e.g., Simmons v. City of Evanston, No. 89 C 9421, 1992 WL 25712, at *9 (N.D.Ill. Jan.31, 1992), Teta cannot alter the private nature of Packard's conduct. While Teta relies on the fact that Packard was working as a resident assistant during the evening of January 23, 1993, whether or not a person is acting under color of state law turns largely on the nature of the specific acts the public official performed rather than on merely whether he or she was actively on duty at the moment of the complained of conduct. Because the complained of conduct in this case bore no meaningful relation to Packard's duties as a resident assistant and Packard did not do anything beyond merely reporting Teta's alleged criminal conduct, Teta cannot establish that Packard was acting under color of state law. Accordingly, Packard's motion for summary judgment as to Count II is granted.[7]

Upon entry of summary judgment on Teta's federal claims, Packard requests that the court decline to exercise supplemental jurisdiction over the remaining state law claims and "dismiss" those claims, relying on United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In response, Teta contends that a remand to state court, not dismissal, is appropriate and, in addition, requests an award of attorney fees and costs associated with Packard's removal of this action to federal court. Neither party contends that the court should exercise supplemental jurisdiction over the remaining state law claims.

 The general rule is that when the federal claims are dismissed prior to trial, the district court should decline to exercise supplemental jurisdiction over the state law claims. Carr v. CIGNA Securities, Inc., 95 F.3d 544, 546 (7th Cir.1996). Although a court might be justified in exercising supplemental jurisdiction in certain circumstances, see, e.g., Timm v. Mead Corp., 32 F.3d 273, 277 (7th Cir.1994), no such circumstances

---

**6.** Teta's alternative argument, that Packard was performing a public function by clearing the building during a fire drill, is misplaced. The complained of conduct in this case is not Packard's alleged physical altercation with Teta during the fire drill; rather, it is Packard's subsequent signing of a criminal complaint later that evening. For this reason, the court need not give any further consideration to Teta's alternative argument.

**7.** Because the court finds that Packard did not act under color of state law, the court need not address Packard's contentions with respect to qualified immunity.

exist in this case. Accordingly, the court declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3).

■■■ The next issue is to determine what should happen to those state law claims. Packard seeks an order dismissing those claims, while Teta seeks an order remanding the case and those remaining claims to state court. The court begins by pointing out to Packard that *Gibbs* is not the appropriate case. That case was originally filed in federal court, and the Supreme Court thus had no occasion to discuss the option of a remand. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619–20, 98 L.Ed.2d 720 (1988). The rule in removal cases is once the federal claims drop out prior to trial and the court declines to exercise supplemental jurisdiction over the remaining state law claims, the court may either remand the case to state court or dismiss the state law claims, although the latter definitely is not the preferred course of action. *See id.* at 351–52, 108 S.Ct. at 619–20; *Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co.*, 990 F.2d 925, 928 (7th Cir. 1993). Because the statute of limitations for Teta's state law claims has most likely expired, dismissal is not the appropriate course of action. *Carnegie–Mellon Univ.*, 484 U.S. at 351–52, 108 S.Ct. at 619–20. Rather, this case should be remanded to state court pursuant to 28 U.S.C. § 1447(c) so that Teta's state law claims can be adjudicated.

■■■ This leaves one loose end—Teta's request for attorney fees and costs pursuant to 28 U.S.C. § 1447(c). Fees and costs under section 1447(c) are discretionary, and the court looks to both the complexity of the case and whether the defendant presented a substantial jurisdictional question in evaluating the propriety of removal. *See Castellanos v. U.S. Long Distance Corp.*, 928 F.Supp. 753, 756–57 (N.D.Ill.1996); *Katonah v. USAir, Inc.*, 876 F.Supp. 984, 990 (N.D.Ill.1995). Teta contends that Packard removed this action to federal court based on federal jurisdiction only to claim that the court lacked subject matter jurisdiction over this case and to seek a dismissal on that basis. Teta contends that this was improper and that Packard should bear Teta's costs relating to the removal.

The court finds Teta's argument to be both flawed and disingenuous. When Packard removed this case to federal court, Teta's complaint clearly attempted to allege a federal cause of action, albeit deficiently. Teta has persisted in attempting to set forth a federal cause of action, even going so far as to replead claims that the court has previously determined to be without legal merit. Teta's other federal claims have been dismissed on their merits, and the court has declined to exercise jurisdiction over the remaining state law claims. This adjudication, the court might add, required a considerable expenditure of the court's resources. Thus, the present lack of subject matter jurisdiction is not the result of the original complaint not setting forth a federal claim; rather, it is Teta's inability to prove a federal claim as alleged in the original complaint (and subsequent amended complaint) and the court's refusal to exercise supplemental jurisdiction. In short, this is not a case of an improper removal for which the defendant should bear the cost. It is a case of a plaintiff stubbornly advancing federal claims and losing. If anyone should bear this cost, it is Teta. Teta should consider himself fortunate—he is returning to state court for adjudication of his state law claims and he is leaving this court without having Rule 11 sanctions imposed for disregarding its admonitions at the Rule 16 conference. The court, in its discretion, denies Teta's request for fees and costs under 28 U.S.C. § 1447(c).

**CONCLUSION**

For the foregoing reasons, Packard's motion for summary judgment on Counts I, II and III is granted. The court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over the state law claims in Counts IV–VII and remands this case to the circuit court of DeKalb County, Illinois pursuant to 28 U.S.C. § 1447(c). Teta's request for attorney fees and costs is denied.