**Nicholas BURRESON, Plaintiff,**

v.

**BARNEVELD SCHOOL DISTRICT, Kevin Knudson and Wausau Underwriters Insurance Co., Defendants.**

**No. 05 C 587 C.**

United States District Court, W.D. Wisconsin.

June 8, 2006.

Todd M. Pfeil, Edward Kraemer & Sons, Inc., Plain, WI, for Plaintiff.

Gregg T. Heidenreich, Law Offices of Stilp & Cotton, Brookfield, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for monetary relief brought under 42 U.S.C. § 1983, plaintiff Nicholas Burreson contends that defendants Barneveld School District and Kevin Knudson violated his rights under the Fourth and Fourteenth Amendments and under Wisconsin law by permitting police officers to interrogate him and obtain a DNA sample from him during school hours and on school property. Jurisdiction is present under 28 U.S.C. § 1331.

Now before the court is defendants' motion for summary judgment. Because the facts do not permit an inference that plaintiff's constitutional rights were violated by defendants in any way, defendants' motion for summary judgment will be granted with respect to plaintiff's claims that his rights to due process, equal protection and freedom from unreasonable search and seizure were violated by defendant Knudson personally or by the policies or customs of defendant Barneveld School District. In addition, because plaintiff's state law claims are not developed sufficiently to permit me to rule upon them, I will decline to exercise supplemental jurisdiction over them and will dismiss them without prejudice.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff Nicholas Burreson is an adult resident of Wisconsin, born on June 8, 1986. At all times relevant to this complaint, he was a student at Barneveld High School in Barneveld, Wisconsin.

Defendant Barneveld School District is a Wisconsin political corporation with administrative offices located in Barneveld, Wisconsin.

Defendant Kevin Knudson is principal of the Barneveld School District (grades K–12). He is also the school district's athletic director. As principal, defendant Knudson is responsible for student discipline and attendance, for overseeing curriculum and scheduling; and for attending meetings at which individual education programs are developed for students with special needs.

Defendant Wausau Underwriters Insurance Company is the insurance carrier for defendant Barneveld School District.

## B. *Police Interviews*

In 2002, the Barneveld School District revised its written policy # 445 regarding police interviews with students on school premises. The policy states:

The Barneveld School Board has the authority to enforce policies which mandate the manner, conditions, and content of police interviews with students on school premises during school hours. It is the school board's desire to foster a cooperative attitude toward law enforcement to seek ways to perform their duties in a manner that does not routinely require them to interrupt a student's school day or disrupt school activities. Therefore, it is the intention of the Barneveld School Board to allow police interviews of students on school premises and during school hours; and to allow police interviews with students without prior parental notification. It is the intent of the Barneveld School Board and local law enforcement to work together jointly to develop procedures that will best serve the legitimate needs of both units of government without unnecessarily intruding on the needs of the other.

Defendant Knudson is the official responsible for implementing the policy. He has never refused a request from the Barneveld Police Department or the Iowa County Sheriff's Department to interview a student on school premises.

Sometime in the fall of 2003, two stolen vehicles were driven into the front of the Deer Valley Golf Course clubhouse. Sergeant Tom DeVoss of the Iowa County Sheriff's Department and Police Chief Tom Forbes of the Village of Barneveld investigated the incident and identified plaintiff as a suspect in the case.

One day (the parties do not say when), DeVoss and Forbes went to Barneveld High School for the purpose of interviewing plaintiff. Once there, the officers spoke with defendant Knudson and asked to meet with plaintiff, telling Knudson that they were conducting an investigation. (On either this occasion or a subsequent one, the officers told defendant Knudson that they planned to take a DNA sample from plaintiff during their interview with him.) Defendant Knudson escorted the officers to an available office and arranged for plaintiff to be called out of class.

Meanwhile, plaintiff was in health class, taking an exam. The phone rang. After his teacher answered the call, she approached plaintiff and told him to report to the principal's office. When plaintiff arrived, defendant Knudson took him to the room where DeVoss and Forbes were waiting, and then left.

DeVoss introduced himself to plaintiff as a representative of the Iowa County Sheriff's Department and explained that he and Forbes were investigating the theft of several vehicles; he assured plaintiff that he was not under arrest. At no time during the ensuing interview did plaintiff ask to leave or object to the officers' questioning.

After their initial interview with plaintiff, DeVoss and Forbes interviewed plaintiff on three subsequent occasions. On each occasion, plaintiff was in English class when his teacher instructed him to report to the principal's office. Upon arriving at the office, plaintiff met the police investigators who interviewed him in private, with only plaintiff and the officers present. During one of these interviews, the officers took a DNA sample from plaintiff. Plaintiff never objected to being questioned or having a DNA sample taken.

Plaintiff has learning disabilities. He processes information slowly and has trouble expressing himself and staying organized. When he was in high school, plaintiff received special education services to address these deficits. Defendant Knudson was aware of plaintiff's special needs

because he had attended plaintiff's individual education program (IEP) planning meetings in his role as the school district's administrative representative.

None of plaintiff's classmates ever asked him why he had been summoned to the principal's office. Plaintiff was able to complete all class work he missed while the officers were interviewing him.

## OPINION

### A. *Federal Civil Rights Claims*

Although the facts underlying plaintiff's claims in this lawsuit arose in the context of a criminal investigation, plaintiff does not challenge the constitutionality of his interrogation or the seizure of his DNA by law enforcement officers. Rather, he challenges whether it was constitutional for his high school principal to call him out of class and escort him to a private office where law enforcement officers proceeded to question him regarding his suspected involvement in criminal activity and to obtain a sample of his DNA. Therefore, this case presents one basic question: Did defendant Knudson violate plaintiff's constitutional rights when, at the request of law enforcement officers and pursuant to school district policy, he agreed to call plaintiff out of class to facilitate a police investigation?

### 1. *Proper defendants under 42 U.S.C. § 1983*

■ Petitioner has named three defendants to his lawsuit: Knudson, the Barneveld School District and Wausau Underwriters Insurance Company. Liability under § 1983 attaches to persons who "under color of any statute, ordinance, regulation, custom, or usage" of state power deprive a citizen of any right under the Constitution or federal law. In order to qualify as a state actor, a "person" must be clothed with the authority of the state. *Home Telephone & Telegraph Co.*

*v. Los Angeles*, 227 U.S. 278, 287–88, 33 S.Ct. 312, 315, 57 L.Ed. 510 (1913). There is no indication that defendant Wausau Underwriters Insurance Company was in a position to take any action on behalf of the state with respect to plaintiff or that it misused state power that it possessed. Its only connection to this case is through its insurance contract with defendant Barneveld School District. Because it is neither a "state actor" nor a "person" within the meaning of § 1983, it is not a proper defendant to plaintiff's civil rights claims.

■ That leaves defendants Barneveld School District and Knudson. Local governing bodies, such as defendant Barneveld School District, may be sued under 42 U.S.C. § 1983 only when their allegedly unconstitutional actions were the result of the implementation or execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or were undertaken "pursuant to governmental custom, even [though the] custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The decisions of a municipality's final decision maker are attributable to the municipality itself. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *McGreal v. Ostrov*, 368 F.3d 657, 685 (7th Cir.2004). It is undisputed that defendant Knudson had final decisionmaking authority with respect to the interpretation and implementation of Barneveld School District policy # 445.

In this case, plaintiff does not contend that defendant Barneveld School District has formally adopted an unconstitutional policy; to the contrary, he concedes that Barneveld School District Policy # 445 is

constitutional. Dkt. # 24, at 9. His challenge is to defendant Knudson's interpretation of that policy, that is, to Knudson's custom of permitting law enforcement officers to interview students whenever they ask to do so.

In his amended complaint, plaintiff does not indicate whether he is suing defendant Knudson in his individual capacity, his personal capacity, or both. The distinction is important:

> Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Because a municipality may not be held liable under § 1983 on a theory of *respondeat superior, Monell,* 436 U.S. at 691, 98 S.Ct. 2018, if defendant Knudson's decision to permit police officers to interview plaintiff violated school district policy, defendant Barneveld School District could not be held liable for his decision. However, plaintiff does not allege that Knudson's actions were a violation of district policy; he contends that they were an *implementation* of district policy, a custom that amounted to giving police officers carte *blanche* to interview students whenever they wished to do so. Therefore, plaintiff's suit against defendant Knudson is not a suit against him in his personal capacity, but rather a suit against him in his official capacity as the district's final decision maker on matters pertaining to police interrogations conducted on school grounds.

■ Because *Monell* authorizes suits brought against local government units directly, "official capacity" suits against municipal decision makers are redundant when the municipality has been named as another defendant. *See, e.g., Busby v. City of Orlando,* 931 F.2d 764, 766 (11th Cir.1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."); *Union Pacific R. Co. v. Village of South Barrington,* 958 F.Supp. 1285, 1291 (N.D.Ill.1997) ("It is well-settled law that claims against municipal officials in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant."); *Kohn v. Mucia* 776 F.Supp. 348, 356 (N.D.Ill.1991). Therefore, because it is really the school district against whom plaintiff's claims are directed, the school district is the only proper defendant to plaintiff's civil rights claims.

### 2. *Due process*

Plaintiff contends that defendant Knudson's decision to summon him from class and permit law enforcement officials to interrogate him on four occasions and obtain a DNA sample from him violated his Fourteenth Amendment right to substantive and procedural due process. The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV. In order to receive protection under the Fourteenth Amendment, a person must have a protected liberty or property interest. *Averhart v. Tutsie,* 618 F.2d 479, 480 (7th Cir.1980).

■ The "property interests protected by procedural due process extend well beyond actual ownership of real estate ... or money," *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and include the right to education when state-sponsored education is made generally available, *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) ("Having chosen to extend the right to an education ... [a state] may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred.").

■ Because Wisconsin guarantees children the right to receive a free public education until the age of 20, plaintiff had a due process right to his continued education. Wis. Const. Art. 10 § 3. Plaintiff contends that he was deprived of his right to receive education without due process when Knudson called him out of class on three or four occasions in order to permit police officers to question him. The assertion borders on frivolous.

No court has ever held that missing a single class may constitute an educational deprivation, even if the class is missed on more than one occasion. Cases addressing the denial of education have focused exclusively on disciplinary decisions that bar students from all access to educational programming, such as suspensions and expulsions. *Pugel v. Board of Trustees of University of Illinois*, 378 F.3d 659, 663 (7th Cir.2004) (graduate student entitled to due process before dismissal for academic misconduct); *Martin v. Shawano–Gresham School District*, 295 F.3d 701, 706 (7th Cir.2002) (middle school student entitled only to verbal notice prior to short-term suspension); *Remer v. Burlington Area School District*, 286 F.3d 1007, 1009 (7th Cir.2002) (high school student entitled to hearing prior to expulsion).

Although courts have recognized that students have a due process interest in avoiding even short-term suspensions, they have done so because

> the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child. Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary.

*Goss*, 419 U.S. 565, 576, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (emphasis added). In this case, plaintiff cannot show that he was "totally excluded" from the educational process; his deprivation (if it can be so characterized) was minimal. Over the course of several months, plaintiff missed portions of three to four English classes. Although he asserts that the effect of missing these classes was more serious for him than for an average student because he has learning difficulties, it is undisputed that he was permitted to complete all the work he missed while he was talking to law enforcement officers without academic penalty. Moreover, there is no evidence that the school made any note of the interrogations or even that plaintiff's teachers or fellow students knew that he had been questioned by police officers. Because plaintiff was not deprived of his right to receive an education, he was not entitled to pre-deprivation process, however minimal. *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir.2001) (in absence of a protected liberty or property interest, "state is free to use any procedures it chooses, or no procedures at all"). Therefore, defendants' motion for summary judgment will be granted with respect to plaintiff's claim that defendant Knudson violated his right

to procedural due process by calling him out of class on three to four occasions.

■ That leaves plaintiff's claim that defendant Knudson's actions violated his substantive due process rights. Substantive due process, "that most amorphous of constitutional doctrines," is implicated when the government exercises power without reasonable justification, and is most often described as an abuse of government power that "shocks the conscience." *Tun v. Whitticker,* 398 F.3d 899, 900 (7th Cir.2005). "The nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides." *Miller v. Henman,* 804 F.2d 421, 427 (7th Cir.1986). Rather than guaranteeing an individual the right to a fair decision making procedure, the concept of substantive due process prevents the state from taking certain actions even if it provides procedural safeguards, by protecting citizens against government conduct that is arbitrary or without reasonable justification. *Tun,* 398 F.3d at 902.

■ However, as the Supreme Court has emphasized, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Cases abound in which government action was criticized but found not to shock the conscience. *See, e.g., id.* (police officer did not violate substantive due process rights of passenger killed in high speed chase); *Galdikas v. Fagan,* 342 F.3d 684, 690–91 (7th Cir.2003) (allegations that school officials induced students to enroll in master's program by knowingly and falsely representing that program was accredited and took other steps to prevent accreditation not sufficiently egregious to shock conscience), *overruled on other grounds* by *Spiegla v. Hull,* 371 F.3d 928 (7th Cir. 2004).

■ Plaintiff contends that a material dispute exists with respect to whether defendant Knudson's conduct "shocks the conscience." However, in light of the prevailing case law, no reasonable jury could conclude that defendant Knudson violated plaintiff's substantive due process rights by calling plaintiff out of class, an act performed daily and routinely by principals throughout the country. Defendant Knudson's conduct not only fails to shock the conscience; it was inherently reasonable. Consequently, defendants' motion for summary judgment will be granted with respect to plaintiff's substantive due process claim.

### 3. *Equal protection*

■ An equal protection violation occurs only when different legal standards are arbitrarily applied to similarly situated individuals. *Smith on Behalf of Smith v. Severn,* 129 F.3d 419, 429 (7th Cir.1997). Although equal protection claims are most commonly brought by members of disfavored classes of citizens or by citizens attempting to enforce fundamental rights, courts have recognized that successful equal protection claims can be brought by a "class of one," when a plaintiff alleges that he "has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

■ In this case, plaintiff has not alleged that he is a member of a disfavored class or that he has been deprived of a fundamental right. *Severn,* 129 F.3d at 429 (right to education not guaranteed by Constitution and therefore not fundamental right). Even more important is the fact that plaintiff concedes that he was treated identically to other similarly situated students: he admits that defendant Knudson

has never refused a request from local law enforcement officers to interview a student on school premises. Because plaintiff was not singled out for arbitrary differential treatment, his equal protection claim fails.

### 4. Search and seizure

■ Although plaintiff's amended complaint made no reference to the Fourth Amendment, the parties have briefed the question whether the school district violated plaintiff's Fourth Amendment rights when defendant Knudson summoned plaintiff from class in order to facilitate a law enforcement investigation. Therefore, I will address whether plaintiff was unlawfully seized or searched by defendant Barneveld School District.

The Fourth Amendment applies principally in the context of law enforcement, preventing police from searching private areas without a warrant absent exigent circumstances and from seizing suspected criminals unreasonably. *Ingraham v. Wright*, 430 U.S. 651, 673 n. 42, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (noting "[t]he principal concern of the Fourth Amendment's prohibition against unreasonable searches and seizures is with intrusions on privacy in the course of criminal investigations"). However, in limited circumstances, Fourth Amendment protection may extend to searches and seizures by non-law enforcement officers, including public school officials. *New Jersey v. T.L.O.*, 469 U.S. 325, 344, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (examination of student's purse constitutes "search"); *Board of Education of Independent School District No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 829, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) (drug testing of student athletes constitutes "seizure"). Plaintiff contends that defendant Knudson violated the Fourth Amendment by calling him out of class in order to facilitate what later proved to be a traditional "search":

the procurement of his DNA for purposes related to criminal investigation.

Although children do not "shed their constitutional rights ... at the schoolhouse gate," *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), "the nature of those rights is what is appropriate for children in school." *Vernonia School District 47J v. Acton*, 515 U.S. 646, 655–56, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Every day, principals, teachers and other school officials direct the movement of school children and summon them from class for myriad reasons: to attend appointments or special events, to consult with counselors or disciplinary officials, to participate in testing or to complete paperwork. Even if the act of summoning a student to the principal's office may be characterized as a seizure in some limited sense, it is an inherently reasonable one:

> Traditionally at common law, and still today, unemancipated minors lack some of the most fundamental rights of self-determination—including even the right of liberty in its narrow sense, i.e., the right to come and go at will.

*Vernonia School District*, 515 U.S. at 654, 115 S.Ct. 2386. A teacher or administrator who seizes a student violates the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent. *Wallace by Wallace v. Batavia School Dist.* 101, 68 F.3d 1010, 1014 (7th Cir. 1995). Because students lack the basic right to determine where they will go and when, school officials do not act unreasonably when they verbally direct students' movement within the school environment. Consequently, defendant Barneveld School District did not violate the Fourth Amendment when defendant Knudson asked

plaintiff's teacher to direct plaintiff to report to Knudson's office.

Petitioner contends that a question of material fact exists as to whether "the school district was involved" in obtaining plaintiff's DNA because "according to Burreson's mother, Mr. Knudson admitted that the police had requested the right to take a DNA sample from Nick Burreson and that after asking what that would entail; Mr. Burreson granted permission for the same." Plt.'s Br., dkt. # 23, at 7. Although it is undisputed that law enforcement officers informed defendant Knudson that they planned to obtain a DNA sample from plaintiff before Knudson agreed to summon plaintiff from class, plaintiff admits that Knudson did not participate directly in obtaining a sample of his DNA. More important, plaintiff makes no allegation that law enforcement officers obtained his DNA illegally.

Unless the act of obtaining plaintiff's DNA was itself unconstitutional, defendant Knudson's peripheral participation in that act could not possibly violate the Fourth Amendment. And although plaintiff suggests that "disputed material facts" prevent resolution of his Fourth Amendment claim on summary judgment, he has not adduced evidence from which it may be inferred that he was subjected to an unreasonable search in violation of the Fourth Amendment or that defendant Knudson played any significant role in any unconstitutional search.

Summary judgment is the "put up or shut up" moment in a lawsuit when a party must come forward to show what evidence he has to convince a trier of fact to accept his version of the facts. *Johnson v. Cambridge Industries, Inc.,* 325 F.3d 892, 901 (7th Cir.2003). When a plaintiff fails to meet that burden, defendants are entitled to summary judgment in their favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, defendants' motion for summary judgment will be granted with respect to plaintiff's claim that defendant Knudson violated the Fourth Amendment by permitting police officers to interrogate and obtain a DNA sample from him during school hours and on school property.

### B. *State Tort Claims*

A district court may decline to exercise supplemental jurisdiction over a state law claim when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). The general rule is that when all federal claims are dismissed prior to trial, the district court should decline to exercise supplemental jurisdiction over remaining state law claims. *Carr v. CIGNA Securities, Inc.,* 95 F.3d 544, 546 (7th Cir.1996). Because I am granting defendants' motion for summary judgment with respect to each of plaintiff's federal claims, no claims remain within this court's original jurisdiction. I will decline to exercise supplemental jurisdiction over plaintiff's remaining claims because, although both parties make reference to plaintiff's "state law claims," it is not entirely clear which state laws plaintiff believes have been violated or how those laws have been violated.

When a court declines to exercise supplemental jurisdiction over state law claims in a case that has been removed from state court, the court has two options: the claims may either be dismissed without prejudice or the case may be remanded under 28 U.S.C. 1447(c) to the state court from which it was removed. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Teta v. Packard,* 959 F.Supp. 469, 477 (N.D.Ill.1997). Although remand is generally preferred over dismissal, in

this case plaintiff's state law claims are so vague and undeveloped that it is not clear whether there is anything left to remand. Therefore, I will dismiss any state law claims that may remain in this case without prejudice to plaintiff's refiling them in state court.

## ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Barneveld School District, Kevin Knudson and Wausau Underwriters Insurance Company is GRANTED in its entirety. Plaintiff Nicholas Burreson's claims that respondents violated his rights under the Fourth and Fourteenth Amendments are DISMISSED with prejudice. Plaintiff's claims that respondents violated his rights under state law are DISMISSED without prejudice to his refiling them in state court. The clerk of court is directed to enter judgment in favor of defendants and close this case.